## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **DENISE D. SMALLWOOD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 20-3025** |
| | ) | |
| **KILOLO KIJAKAZI,**[1] | ) | |
| **Acting Commissioner of Social** | ) | |
| **Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>OPINION</u>

**SUE E. MYERSCOUGH, United States District Judge:**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Defendant's Decision denying Plaintiff Denise D. Smallwood's application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3). Before the Court are the Plaintiff's Motion for Summary Judgment [d/e 10] and the Defendant's Motion for Summary Affirmance [d/e 16].

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted for Andrew Saul as the Defendant.

## BACKGROUND

The Plaintiff, who was 51-years old at the time of her alleged onset date, states that she has a combination of medical problems including degenerative disc disease, osteoarthritis of the hips, a closed sacrum fracture, incontinence, transient ischemic attacks, and emphysema with chronic obstructive pulmonary disease (COPD). Doc. 10, at 1-2.  The Plaintiff last worked as a farmhand in July 2016. Id. at 1.  She stopped working after being kicked by a 1,500 pound bull.  Id. at 2.

On July 29, 2016, the Plaintiff filed an application for Supplemental Security Income alleging disability beginning July 29, 2016.  Doc. 17, at 2.  On August 28, 2018, a hearing at which the Plaintiff testified was held before an administrative law judge (ALJ). Id.  On November 21, 2018, the ALJ issued a Decision finding that Plaintiff was not disabled.  Tr. 11-21.  The ALJ found that, pursuant to 20 C.F.R. §§ 404.1520(c) and 416.920(c), the Plaintiff had severe impairments which included a history of closed sacrum fracture, degenerative disc disease of the lumbar spine, osteoarthritis of the hips, history of transient ischemic attacks, and emphysema/mild chronic obstructive pulmonary disease.  Tr. 14.  However, the ALJ

found that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P.  Tr. 16.  The ALJ found that Plaintiff has the residual functional capacity (RFC) to perform light work and jobs exist in significant numbers in the national economy that Plaintiff can perform.  Tr. 16, 20.

The Appeals Council denied the Plaintiff's request for review of the ALJ's Decision, thereby rendering it the agency's final decision for purposes of judicial review.  See 20 C.F.R. § 416.1481.

Having determined that the ALJ's Decision is not supported by substantial evidence and, pursuant to 42 U.S.C. § 405(g), the Court hereby reverses the Commissioner's Decision and remands the matter to the Commissioner for further proceedings.

## DISCUSSION

The Plaintiff claims that the ALJ impermissibly cherry-picked evidence by overlooking portions of the record that support Plaintiff's disability claim.  The Plaintiff further alleges the RFC determination was not supported by substantial evidence, and the ALJ did not make a proper credibility determination.  The Defendant claims that the ALJ's RFC finding and subjective symptoms assessment are

supported by substantial evidence; moreover, the ALJ did not err in considering the record medical evidence.

<u>Legal standard</u>

To establish disability, a claimant must show an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled only if his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Plaintiff has the burden of proving she is disabled. See <u>Prill v. Kijakazi</u>, 23 F.4th 738, 746 (7th Cir. 2022) (citing 20 C.F.R. § 404.1512(a)).

When, as here, the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner. *See Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). The Act specifies that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42

U.S.C. § 405(g).  "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014) (citations omitted).  Although the task of a court is not to re-weigh evidence or substitute its judgment for that of the ALJ, the ALJ's decision "must provide enough discussion for [the Court] to afford [the Plaintiff] meaningful judicial review and assess the validity of the agency's ultimate conclusion." *Id.* at 856-57.  The ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted).  A court does not "resolve conflicts or decide questions of credibility." L.D.R. v. Berryhill, 920 F.3d 1146, 1151 (7th Cir. 2019).

Analysis

The Plaintiff alleges the only opinion evidence is from the state agency reviewing doctor who never examined the Plaintiff nor reviewed the vast majority of the medical evidence in the file.  Doc. 10, at 6.  Moreover, the Plaintiff alleges the ALJ's RFC finding is improperly constructed from opinions of doctors who reviewed

records only three and six months after the traumatic kick by a bull which broke her tailbone.  Id.  The Plaintiff alleges that, although the Social Security Administration stated she would get better within twelve months, that did not happen.  Doc. 10, at 8.

The Defendant claims the ALJ committed no error in assigning great weight to the October 2016 and January 2017 findings of state-agency medical consultants Dr. Rohs and Dr. Madala, who limited Plaintiff to a restricted range of light work.  Doc. 17, at 9.  Moreover, the ALJ considered that the findings of Dr. Rohs and Dr. Madala were generally consistent with the record as a whole and were based on extensive knowledge of the Social Security Administration's disability program.  Doc. 17, at 10.  The Defendant further notes that no other medical professional offered an opinion regarding the Plaintiff's functional limitations.  "When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error."  Dudley v. Berryhill, 773 F. App'x 838, 843 (7th Cir. 2019) (citing Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004)).

The Plaintiff cites doctor visits in August 2016, wherein the doctor noted it was difficult for plaintiff to lift, bend, squat, or climb. Id.  She had an antalgic gait and was tender over her sacrum.  Id.  In

6

September 2016, Dr. Baginski noted the Plaintiff "appeared uncomfortable" and was positive for tingling and sensory change. Id. The Plaintiff is also critical of the ALJ ignoring Dr. Froman's conclusion that "[u]ntil such time as she is physically better, Denise cannot perform one and two step assemblies at a competitive rate." However, Dr. Froman, a clinical psychologist, was tasked with performing a mental status examination of the Plaintiff. Tr. 527.

In October 2016, the Plaintiff was referred to Dr. Dedes for a pain consultation. Doc. 10, at 9. While the pain fluctuated somewhat, it was severe at times and affected her activities of daily living. Id.

A November 2016 CT of the Plaintiff's cervical spine revealed degenerative disc disease and neural foramen narrowing most significant at C5-C6. Id. In December 2016, the Plaintiff was determined to have carotid artery stenosis. Id.

In January 2017, the Plaintiff saw Dr. Baginski complaining of pain in her joint, pelvic region, lower back, and left thigh. Id. Dr. Baginski noted that she "appears uncomfortable." Id. In February 2017, when the Plaintiff followed up on her carotid artery stenosis, it was noted that her other issues included chronic low back pain,

7

chronic lumbosacral DDD, and fracture of sacrum.  Id.  The same month, the Plaintiff saw Dr. Davenport because of neck pain and discovered she had a urinary tract infection.  Id.

In March 2017, Dr. Baginski noted that Plaintiff's chronic pain was increasing in severity.  Doc. 10, at 10.  He referred the Plaintiff to an orthopedist, Dr. Stewart, who saw her in April 2017.  Id.  Dr. Stewart stated it became "rapidly apparent" that Plaintiff is having some episodes that may be considered "red flag issues" concerning her back including the urinary incontinence and several collapsing episodes where her legs gave out and she fell.  Id.  The Plaintiff's back pain radiated down her buttocks in her legs beyond her knees.  Id. Dr. Stewart noted that during the exam, Plaintiff had difficulty standing without assistance; she had positive straight leg raising bilaterally; her gait was unsteady; and she was using a walker.  Id. The Plaintiff states that the ALJ does not mention Dr. Stewart's notes in her analysis.  Id.

In April 2017, after an increase in back pain and numb legs, the Plaintiff saw Dr. Gold, a neurologist.  Id.  Dr. Gold noted Plaintiff had balance issues and was positive for back pain and gait problem; Plaintiff was in distress with pain.  Id.  He performed a test to

determine problems with a hip or sacroiliac joint and noted it was "exquisitely painful on the left side." Id. Dr. Gold recommended another steroid injection. Id. The ALJ did not discuss the visit to Dr. Gold in her Decision.

In April 2017, the Plaintiff again saw Dr. Dedes and underwent the injection which improved her pain 100% at the time. Id. The following month, at a visit with the nurse practitioner, the Plaintiff's pain relief had been reduced to 20% improvement. Id. In June 2017, the nurse practitioner noted a 40% improvement in pain in the sacroiliac joint but still noted cramps in the Plaintiff's legs. Doc. 10, at 11.

In July 2017, the Plaintiff was referred to a urologist, Dr. Rosen, who concluded that her urinary incontinence and discomfort was likely related to her chronic back pain. Id. The Plaintiff saw another doctor for chronic back pain and was placed on antibiotics for her urinary issues. Id.

In August 2017, the Plaintiff saw Dr. Ouwenga for bladder problems and underwent a cystoscopy. Id. Dr. Ouwenga noted the Plaintiff's issues with her bladder have occurred since the kick by the bull and her stroke. Tr. 884-85. The Plaintiff also saw Dr.

9

Efstratiades for her carotid artery stenosis.  Doc. 10, at 11.  The ALJ
notes that Plaintiff was "doing great" and "completely asymptomatic."
Tr. 19.  The Plaintiff states that the ALJ fails to note the record from
this visit shows Plaintiff continues to have present, not resolved
problems, including chronic low back pain; pain in joint, pelvic
region, and thigh; incontinence; insomnia; degenerative disc disease;
and closed fracture of sacrum.  Tr. 891.

In September 2017, the Plaintiff went to the emergency room
complaining of low back pain following a fall the week before.  Tr.
851.  In December 2017, the Plaintiff returned to Dr. Dedes for
another injection.  Tr. 1097.  The Plaintiff returned to the ER after a
fall in January 2018 at which time imaging revealed minimal
anterolisthesis of L4 on L5, disc narrowing throughout the lumbar
spine with mild spondylosis, and facet arthritis in the lower spine.
Tr. 875.  Later that month, the Plaintiff went to the nurse practitioner
and reported that the injection the previous month did not really
help.  Tr. 875.  The Plaintiff's pain was sharp and stabbing and
constant and radiated down from the lower back to her legs to her
feet.  Tr. 988.  The Plaintiff was diagnosed with chronic bilateral low
back pain with bilateral sciatica.  Tr. 989.  The Plaintiff was given a

shot for pain and three prescription medications.  Tr. 990.  The Plaintiff notes that the ALJ does not mention this visit in her Decision.  Doc. 10, at 12.

On February 1, 2018, the Plaintiff saw Dr. Raif who noted the chronic pain.  Tr. 996.  Dr. Raif also noted that Plaintiff's pain is constant between a 6-7/10 and up to 8-9/10; her pain is worse with activity and walking, and it hurts to sit or stand for too long.  Id.  Dr. Raif also stated that Plaintiff should avoid lifting over 20 pounds.  Tr. 19.  The Plaintiff notes that although the ALJ mentions the weight limit in her Decision, the ALJ ignores Dr. Raif's comments from the same visit documenting her problems with walking, sitting, and standing.  Doc. 10, at 12.

On February 2, 2018, the Plaintiff underwent an MRI of both her cervical and lumbar spine.  Tr. 1093-94.  It reveals a disc bulge at C5-6 and spondylosis with bilateral foraminal narrowing and another disc bulge with no herniation at L5-S1 and mild facet arthritis.  Id.  Dr. Raif referred the Plaintiff for physical therapy starting on February 8, 2018, in order to address deficits in decreased motion, strength, balance posture, gait, joint dysfunction, and pain.  Tr. 1004.  The physical therapist observed that Plaintiff

11

had difficulty with bathing, grooming, and household activities. Tr. 1006. The Plaintiff notes that the ALJ Decision does not address this portion of the record. Doc. 10, at 12.

In April 2018, the Plaintiff returned to Dr. Raif for chronic back pain stating that the pain reliever wears off after three hours and her back and legs hurt constantly. Tr. 1049. Dr. Raif recommended that Plaintiff wear support hose and elevate her legs as needed. Tr. 1053. On May 31, 2018, the Plaintiff saw Dr. Raif following an ER visit on May 22, 2018, when she felt a pop in her back and could not stand up fully. Tr. 1063. Dr. Raif noted Plaintiff was ambulating well but slow and her coccyx was very sensitive to touch. Tr. 1066. He advised Plaintiff to continue with her medications, use ice, and follow up with him if not better in two weeks. Tr. 1067. In June 2018, the Plaintiff returned to Dr. Raif with complaints of lower back and coccyx pain. Tr. 1144. Dr. Raif noted that the pain was better though Plaintiff still had mild chronic pain. Tr. 1148.

In her brief in support of summary judgment, the Plaintiff states she is in her mid-50's with a 9th grade education with past work experience as an unskilled farmhand. Doc. 10, at 13. Citing the medical vocation guidelines, C.F.R. Part 404, Subpart P appendix 2,

Section 201.09, the Plaintiff noted that, if the only work Plaintiff could perform is sedentary, she would be deemed disabled. Id. The Plaintiff claims that the over 40 doctor visits covering the two years after the kick by the bull establish that her low back pain, as well as her incontinence and COPD, would prevent the Plaintiff from standing six hours out of an eight-hour workday that is required for light jobs. Id. The Plaintiff alleges the evidence does not support the ALJ's RFC. Id.

The Defendant claims that the ALJ's determination that Plaintiff has the RFC to perform a restricted range of light work is supported by substantial evidence. Doc. 17, at 4. Moreover, the ALJ provided a narrative discussion of the medical and nonmedical evidence and assessed Plaintiff's abilities consistent with 20 C.F.R. § 416.945 and SSR 96-8p. Doc 17, at 5. The Defendant notes that the ALJ "need not provide a complete written evaluation of every piece of testimony and evidence." See Schmidt, 395 F.3d at 744.

As the Court noted, the ALJ did not address the Plaintiff's March 2017 visit to Dr. Stewart, the orthopedist, for chronic pain. Dr. Stewart noted the Plaintiff's "red flag" issues regarding her back, in addition to pain radiating down her body and episodes when her

13

legs gave out and she fell to the ground.  Tr. 641.  Dr. Stewart further noted that Plaintiff had difficulty standing without assistance, had an unsteady gait, and was using a walker that day.  Tr. 642.

The ALJ also did not address the Plaintiff's visit in April 2017 with Dr. Gold, the neurologist.  Dr. Gold noted balance issues and that Plaintiff was positive for back pain, gait problem, and appeared in some pain distress.  Tr. 647.  Dr. Gold performed the Patrick's maneuver or Faber test and noted it was "exquisitely painful on the left side."  Id.

While the ALJ mentions Dr. Efstratiadis' statement at an August 2017 evaluation that Plaintiff was "doing great" and "completely asymptomatic" following her carotid endarterectomy procedure, see Tr. 18, the ALJ does not address the problems that remained from the same visit, including chronic lower back pain; pain in joint, pelvic region, and thigh; incontinence; insomnia; degenerative disc disease; and closed fracture of sacrum.  Tr. 891.

Additionally, while the ALJ notes that Dr. Raif evaluated the Plaintiff in February 2018 and found that Plaintiff should avoid heavy lifting and defined the weight limit at 20 pounds, which is consistent with light exertional work, see Tr. 19, the ALJ does not mention Dr.

14

Raif's comments from the same visit which noted Plaintiff's pain is worse with activity such as walking, she has difficulty sitting or standing for too long, and she was referred for physical therapy. Tr. 995-98. The ALJ also does not address the physical therapist's observation that Plaintiff had difficulty with bathing, grooming, and household activities. Tr. 1006.

The Defendant correctly notes that the ALJ need not address every piece of evidence. Because the ALJ did not address certain evidence which could suggest that Plaintiff did not have the RFC to perform a restricted range of light work, however, the Court is unable to conclude that the ALJ's Decision is supported by substantial evidence. "An ALJ cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding." Reinaas v. Saul, 953 F.3d 461, 466 (7th Cir. 2020) (quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)). Given that the evidence not addressed could support greater limitations than those found by the ALJ, the Court will remand the matter to the agency for further proceedings.

Because the ALJ did not address this evidence in the record, the Court further concludes that the ALJ did not build an accurate

and logical bridge from the evidence to her conclusion.  The ALJ uses the boilerplate language that even though the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  Tr. 17.  The Seventh Circuit has repeatedly criticized this or similar language by the ALJ as "meaningless boilerplate."  See Arnett v. Astrue, 676 F.3d 586, 592 (7th Cir. 2012); Bjornson v. Astrue, 671 F.3d 640, 644-46 (7th Cir. 2012); Martinez v. Astrue, 630 F.3d 693, 694 (7th Cir. 2011).  However, courts will uphold the ALJ's credibility determination if the ALJ provides specific reasons for discrediting a claimant's testimony.  See Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012).  Because the ALJ did not address some of the record evidence that could have supported the Plaintiff's subjective symptom assessment, the Court concludes that the ALJ's credibility determination is also flawed.

Based on the foregoing, the Court concludes that the ALJ's Decision is not supported by substantial evidence.

For the reasons stated herein, Plaintiff Denise D. Smallwood's Motion for Summary Judgment [d/e 10] is GRANTED.

Defendant Commissioner of Social Security's Motion for Summary Affirmance [d/e 16] is DENIED.

Pursuant to the fourth sentence of 42 U.S.C. § 405(g), the Commissioner's Decision in this matter is REVERSED and the cause is REMANDED to the Commissioner for further proceedings.

Pursuant to Rule 25(d), the Clerk will substitute Kilolo Kijakazi, Acting Commissioner of Social Security, as the Defendant in this case.

The Clerk will enter Judgment and terminate this case.

ENTER: September 28, 2022

FOR THE COURT:

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT COURT

17